# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STANLEY WILLIAM HARRISON,

      Defendant-Appellant.

UNPUBLISHED
September 22, 2016

No. 327708
Washtenaw Circuit Court
LC No. 13-001540-FC

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Stanley William Harrison, was convicted by a jury of first-degree murder, MCL 750.316(1)(a), and sentenced to life in prison. He appeals as of right his September 29, 2014 judgment of sentence. We affirm.

## I. FACTUAL & PROCEDURAL BACKGROUND

On September 27, 2013, defendant stabbed Shandar Turner to death in front of her four-year-old twins. After hearing the children begging for their mother not to die, a neighbor, Teala Stevens, ran down stairs and to the victim, who was lying in the yard with her sons standing over her. The victim asked Stevens to take her twins into her home and call 911. Emergency medical services personnel arrived shortly thereafter, performed on-scene medical attention, and took the victim to the hospital, where she later died. According to the medical examiner, the victim was stabbed eleven times, and a stab wound through her lungs caused her death, which was determined to be a homicide. The four-year-old twins identified defendant, who was referred to as "Daddy Stanley," as the person who stabbed their mother.[1] Defendant was eventually convicted and sentenced as described above. This appeal followed.

## II. ANALYSIS

### A. DEFENDANT'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM

---

[1] To be clear, defendant was not the children's father.

-1-

Defendant first argues that he was deprived of his Sixth Amendment right to confront the witnesses against him when the victim's four-year-old twins' statements were presented to the jury at trial. Relatedly, defendant also argues that the twins' statements were improperly admitted as excited utterances. We disagree in both respects.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Questions of law are reviewed de novo. *Id*.

The federal and state constitutions afford an accused the right "to be confronted with the witnesses against him." US Const, Am VI; Const 1963, art 1, § 20; see also *Pointer v Texas*, 380 US 400, 406; 85 S Ct 1065; 13 L Ed 2d 923 (1965); *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). "The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Whether an out-of-court statement is testimonial or nontestimonial is thus a crucial inquiry. Statements are considered nontestimonial when they are made "in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police to meet an ongoing emergency." *Davis v Crawford*, 547 US 813, 813-814; 126 S Ct 2266; 165 L Ed 2d 224 (2006). However, statements made in the course of police interrogation are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

Hearsay is generally inadmissible. MRE 802. Under MRE 803(2), a statement is not excluded by this general rule if it is an excited utterance, i.e., a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Three criteria must be satisfied before a statement can be admitted into evidence as an excited utterance: "[f]irst, the statement must arise out of a startling event; second, it must be made before there has been time for contrivance or misrepresentation by the declarant; and third, it must relate to the circumstances of the startling event." *People v Kowalak (On Remand)*, 215 Mich App 554, 557; 546 NW2d 681 (1996). "There can be no definite and fixed limit of time in determining whether a declaration comes within the excited utterance exception." *Id*. at 559 (citations and internal quotation marks omitted).

In this case, defendant takes issue with three statements that the twins made to individuals regarding the death of their mother: their statement to Stevens, their statements to

Detective Chad Teets, and their statements to Deputy Kevin Hause.[2]  We will address each argument separately below.

## 1.  STATEMENT TO STEVENS

Defendant takes issue with the following statement that the twins made to Stevens:  "My daddy--Daddy Stanley killed my mom--mommy, because she didn't love him anymore."  This statement was made to Stevens when Stevens ran to the victim in the victim's yard while the twins were standing over their recently stabbed mother.  Applying the rules set forth above, this statement constitutes an excited utterance because it was made immediately after witnessing their mother's brutal stabbing while begging her not to die.  Though it was made in response to a question asked by Stevens, i.e., what happened to their mother, the immediate nature of this exchange certainly qualifies as an excited utterance.  Thus, the applicable hearsay rules did not bar its admission.  Relatedly, there is also no violation of defendant's confrontation rights because the statement to Stevens was nontestimonial in nature.  It was made to a neighbor, not law enforcement personnel, immediately after a brutal stabbing while the victim was bleeding to death.  These circumstances reflect a statement made during an ongoing emergency, not to assist in a potential prosecution.  Accordingly, we discern no error in the trial court's admission of the twins' statement to Stevens.

## 2.  STATEMENTS TO LAW ENFORCEMENT

### *I*.  STATEMENTS TO DETECTIVE TEETS

Defendant also takes issue with the twins' statement to Detective Teets where they identified defendant, "Daddy Stanley," as their mother's killer.  Specifically, defendant challenges the admissibility of Teets's question regarding whether "Stanley Jackson," not defendant, i.e., Stanley *Harrison*, killed their mother.  According to Detective Teets, "the name [Stanley Johnson] just popped in [his] head" when he spoke with the twins at the scene.  Jackson, who was apparently a suspect in a previous investigation, was dead at the time of this murder.  It is our view that the twins' statement in response to Teets's questions at the scene also constituted excited utterances.  Teets spoke with the twins shortly after their mother was lethally stabbed, and we have no doubts in concluding that the startling, horrific, and excited nature of that

---

[2] Both twins testified at preliminary examination.  One of the twins acknowledged the difference between the truth and a lie, originally refused to tell the truth, later agreed to tell the truth, and ultimately denied knowledge of his mother's murder.  While the trial court admitted this twin's testimony over defendant's objection, this testimony obviously did not support the first-degree murder charge.  The other twin, however, acknowledged the difference between the truth and a lie, agreed to tell the truth, and ultimately testified that defendant stabbed the victim to death.  Specifically, he stated as follows:  "We saw him pull out a knife and killed her."  He testified that he and his brother followed their mother outside, where Stevens found them.  Accordingly, it is this testimony that supported the first-degree murder charge.  Both twins were available for cross-examination at preliminary examination, but only the second twin—the twin who testified that defendant killed the victim—was actually cross-examined.

incident remained despite the minimal lapse of time between the stabbing itself and the four-year-old twins' statements at issue. While the time between the murder and the statements certainly must be considered, we find other factors, e.g., the children's young age and the brutal nature of their mother's murder, equally important. See, e.g., *People v Soles*, 143 Mich App 433, 438; 372 NW2d 588 (1985) (providing that a six-year-old child's statement regarding a sexual assault was admissible as an excited utterance despite the fact that it was made to an officer five days after the assault). For similar reasons, we also conclude that the twins' statements to Detective Teets at the scene were nontestimonial nature as well. While arguable, it is our view that the children's young age, the brutal nature of their mother's murder, and the location of seemingly brief questioning reflect that the statements were made during an ongoing emergency, not with the intent to aid a subsequent prosecution.[3] Accordingly, we discern no error in the trial court's admission of the twins' statements to Detective Teets.

Defendant's argument on appeal focuses on his position that any ongoing emergency had concluded once the twins were taken inside and law enforcement arrived; therefore, he claims, any conversations between law enforcement and the twins were solely intended to produce information to assist in an eventual prosecution. However, the United States Supreme Court has expressly rejected such an unduly narrow understanding of "ongoing emergency." *Michigan v Bryant*, 562 US 344, 362; 131 S Ct 1143; 179 L Ed 2d 93 (2011). As the Supreme Court recognized, the presence of an ongoing emergency is only one, albeit an important one, of a variety of factors that are to be considered in determining whether a declarant's statement to law enforcement is testimonial in nature. See *id*. at 366-371, 374. For example, courts must also consider the informality of the encounter between the declarant and law enforcement, and it is our conclusion that the conversation between law enforcement and two four-year-old children shortly after watching their mother being stabbed to death constituted an informal encounter. *Id*. at 366. Furthermore, just like the officers in *Michigan v Bryant*, the officers in this case "did not know why, where, or when" the crime had been committed. *Id*. at 375-376. We therefore reject defendant's claim that the children's presence inside an apartment and law enforcement's arrival rendered all statements made thereafter testimonial in nature.

## II. STATEMENTS TO DEPUTY HAUSE

Defendant additionally takes issue with the twins' statements, which could be better characterized as a statement and gesture, to Deputy Hause that "he did like that" or "he had a knife and he did like that" while gesturing. These statements, like the statements made to Detective Teets, were made relatively shortly after their mother's murder, at the scene, and while there were certainly exciting factors present. These factors, coupled with the children's young age and brutal nature of their mother's murder, qualify these statements as excited utterances as well. Similarly, we conclude that there was no constitutional error for the same reasons as those

---

[3] Even if the twins' statement to Detective Teets was testimonial in nature, its admission was nevertheless harmless as discussed below.

cited with respect to the statements made to Detective Teets.[4]  Accordingly, we discern no error in the trial court's admission of the twins' statements to Deputy Hause.

### *III*. HARMLESS ERROR

Even if we assume that the twins' statements to law enforcement were improperly admitted in violation of defendant's confrontation rights, however, reversal is not required because any error was harmless.  "Harmless error analysis applies to claims concerning Confrontation Clause errors[.]"  *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (citation omitted).  Constitutional errors are harmless if it is clear, beyond a reasonable doubt, that a rational jury would have found the defendant guilty absent the error at issue.  *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014).  Similarly, any evidentiary error is "presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative."  *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002) (citation and internal quotation marks omitted).

Applying those rules to this case, we simply cannot conclude that a rational jury would have found defendant not guilty had the twins' statements to law enforcement been excluded. Aside from other evidence implicating defendant's guilt in this matter, e.g., his statement, the blood found on his shoes, pants, and tank top, his threatening letters, his argument with the victim shortly before the murder, and other evidence placing him at the scene, the twins' statements to Stevens immediately after defendant stabbed their mother to death certainly provided the jury with significant evidence of defendant's guilt.  In short, we are not persuaded that the twins' statements to law enforcement, which were largely consistent with their statements to Stevens, were outcome determinative in any manner.  Accordingly, any error in this regard, assuming one, was harmless and not outcome determinative.[5]

### 3.  THE 911 CALL

Defendant further challenges the trial court's admission of Stevens's 911 call, arguing that it was not relaying current events.  The record reflects otherwise.  Stevens called 911 to report an ongoing emergency—the victim had recently been stabbed eleven times and was

---

[4] As with the twins' statement to Detective Teets, even if the twins' statement to Deputy Hause was testimonial in nature, its admission was nevertheless harmless as discussed below.

[5] Indeed, as the trial court explained in addressing defendant's post-trial motions, there was a substantial amount of evidence supporting the jury's verdict:

> It was one of the strongest first degree murder cases I've ever presided over. There was just a ton of evidence.  We had eyewitness testimony from the children that said that he stabbed the victim.  We had him covered in the victim's blood. We had his footprints in the blood.  Frankly, it was an overwhelming amount of evidence to suggest, and the jury concluded easily that, beyond a reasonable doubt, he was the murderer.

bleeding to death with her four-year-old twins standing over her and begging her not to die. Thus, the 911 call was clearly an excited utterance and nontestimonial in nature, and we see no reason to address such an argument any further.

## B. VOLUNTARINESS OF DEFENDANT'S CONFESSION

Defendant argues that he was deprived of his constitutional right to a fair trial by the admission of a statement he made to police long after he invoked his right to remain silent. We disagree.

The United States and the Michigan constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. A defendant's waiver of his Fifth Amendment right to silence must be knowingly, voluntarily, and intelligently made. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Whether a statement was knowingly, voluntarily, and intelligently made must be determined under the totality of circumstances. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). The prosecution has the burden of proving by a preponderance of evidence that the defendant's waiver was knowingly, intelligently, and voluntarily made. *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000).

This Court has described this analysis as follows:

> [W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion. A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. The voluntariness of a defendant's statements is determined by examining the totality of the circumstances surrounding the interrogation. A court should consider factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; or any promises of leniency.
>
> Whether a waiver was made knowingly and intelligently requires an inquiry into defendant's level of understanding, irrespective of police conduct. A defendant does not need to understand the consequences and ramifications of waiving his or her rights. A very basic understanding of those rights is all that is necessary. [*People v Gipson*, 287 Mich App 261, 264-265; 787 NW2d 126 (2010) (internal citations and quotation marks omitted).]

Because defendant did not challenge the voluntariness of his statement below, our review of defendant's argument in this regard is ultimately reviewed for plain error affecting defendant's substantial rights. *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004).

In this case, the record reflects that defendant's statement was knowingly, voluntarily, and intelligently made. Huron Township Police Department Chief of Police Everette Robbins

testified that, while obtaining defendant's buccal swab, defendant expressly asked to speak with law enforcement.[6] According to Chief of Police Robbins, defendant was accordingly informed of his *Miranda* rights and that the conversation would be recorded. Defendant read the *Miranda* rights waiver form, asked a question regarding the impact of signing this form, and was informed "that he would still have rights and that he could conclude the interview, as he ultimately chose to do." While we acknowledge defendant's contention that approximately 72 hours passed between his arrest and confession as well as his contention that approximately 96 hours passed between his arrest and arraignment, nothing in the record reflects any intimidation, coercion, or deception. See, e.g., *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (providing that "the length of the detention of the accused before he gave the statement in question" and "whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession" as two of a variety of factors to be considered in determining the voluntariness of a statement). In our view, the temporal nature, coupled with no other intimidating, coercive, or deceptive factors, does not establish plain error requiring reversal. Stated simply, the record demonstrates that defendant, who was no stranger to the criminal-justice system, understood and exercised his *Miranda* rights prior to voluntarily waiving them when he asked to speak with law enforcement.

## C. PREVIOUS INCARCERATION

Defendant also argues that he was deprived of his constitutional right to a fair trial by the admission of evidence regarding the fact that he was recently released from prison. We disagree.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Burns*, 494 Mich at 110. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Lane*, 308 Mich App at 51.

MRE 402 provides that "[a]ll relevant evidence is admissible." Evidence is relevant if it has a tendency "to make the existence of any factual consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Relevant evidence thus is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable that it would be without the evidence)." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000), citing *People v Mills*, 450 Mich 61, 66-68; 537 NW2d 909 (1995). "However, materiality does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Mills*, 450 Mich at 67-68. Rather, it must only be "in issue." *Id*. at 68.

---

[6] We are unpersuaded by defendant's claim that he was allowed to ask law enforcement questions concerning the victim's wellbeing and their investigation without otherwise waiving his right to silence. Similarly, the fact that defendant does not feel his questions in this regard were adequately answered is largely irrelevant. He does not provide, and we are unaware of, any authority to support these positions.

The admission of other-acts evidence reflecting on a defendant's character is limited by MRE 404(b) to avoid the danger of the jury convicting a defendant based on his or her history of other misconduct rather than on the evidence of his or her conduct at issue in that case. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides as follows:

> Evidence of other crimes, wrongs, or action is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence of other crimes or acts is thus admissible under MRE 404(b) if the following requirements are satisfied: (1) the evidence is being offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, (2) the evidence is relevant to an issue or fact of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 111 (1993), amended on other grounds 445 Mich 1205 (1994).

In this case, defendant claims that evidence regarding his recent release from prison was irrelevant and unfairly prejudicial, but the record does not support his claim. It is important to review the evidence at issue in context. Specifically, the evidence regarding defendant's release from prison was included in letters that defendant had sent the victim from prison and statements made by the victim to defendant.[7] Those letters included defendant's threat that there would be a "price to pay" if defendant learned that the victim was unfaithful to him while he was incarcerated. The fact that defendant did precisely what he threatened he would, i.e., make the victim pay a price once he was released, was incredibly relevant to the issues presented at trial and provided defendant's motive, and the prejudicial effect, if any, was minimal in light of the context of the evidence and the other testimony in the record. Furthermore, the jury was instructed that it was not permitted to consider "testimony that the defendant had been convicted of another crime and had been in prison" "in any way as evidence of--or likelihood of guilt." "It is well established that jurors are presumed to follow their instructions," and defendant makes no effort to overcome this presumption. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, the trial court did not err in admitting evidence of defendant's previous incarceration.

### D. PROSECUTORIAL MISCONDUCT

---

[7] Defendant threatened the victim that he "go[es] hard when played, hurt, or disrespected," that she would have "a price to pay" if she were unfaithful to him during his previous incarceration, and that he "love[d] to surprise and pop up on a motha-fucka." The victim allegedly threatened defendant with the fact that his actions could result in parole violations and further incarceration.

Defendant argues that he was deprived of his constitutional right to a fair trial based on the prosecutor's improper and inflammatory statements during closing and rebuttal arguments. We disagree.

Because defendant did not object to any of the alleged instances of prosecutorial misconduct, this argument is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If plain error is shown, reversal is only warranted when it resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). This Court will not find error requiring reversal when a curative instruction could have alleviated the prejudicial effect of any misconduct. *Bennett*, 290 Mich App at 476.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Where a claim of prosecutorial misconduct is based on the assertion that the prosecutor made an improper argument, the "remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005).

Defendant makes three specific prosecutorial-misconduct arguments on appeal. First, he argues that the prosecution improperly shifted the burden of proof by commenting on the fact that defendant chose not to defend himself by speaking with law enforcement. Second, he argues that the prosecution improperly appealed to the jurors' sympathies by repeatedly referring to the brutal nature of the murder. Third, he argues that the prosecution improperly referred to defendant's theory as a "red herring." We will address each argument separately below.

## 1. SHIFTING THE BURDEN OF PROOF

On appeal, defendant takes issue with the prosecutor's comments regarding his alleged failure to defend himself to law enforcement. This is not an accurate characterization of the record. The prosecutor argued to the jury, in response to defense counsel's claim that a third party was involved based on a variety of untested evidence, that defendant's actions did not reflect those of an innocent bystander. Indeed, the prosecutor expressly explained that, while defendant was not required to make a statement, the jury was permitted to consider the statement that defendant did make. We discern no misconduct in this regard. In any event, even if we assume that the prosecutor's comments relating to defendant's partial silence were improper, any error was presumptively cured by the trial court's jury instructions, and defendant makes no effort to overcome that presumption. *Graves*, 458 Mich at 486.

## 2. APPEAL TO JURORS' SYMPATHY

Defendant also takes issue with the prosecutor's characterization of the victim's murder as horrific and brutal. Specifically, defendant claims that by arguing that "[f]our people know what happened that night" and that "[o]ne of them is dead, one of them is in this courtroom, and two of them are four-year-old boys[ that] saw it," the jury's verdict was a product of sympathy.

We find no error in this regard as well. The prosecutor is not required to use the blandest language possible, and these statements were certainly supported by the evidence presented at trial. See *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996). Additionally, even if we assume, again, that this characterization was improper, any error was presumptively cured by the trial court's jury instructions, and defendant makes no effort to overcome this presumption. *Graves*, 458 Mich at 486.

### 3. THE TERM "RED HERRING"

Defendant additionally argues that a new trial is required because the prosecutor used the term "red herring" during his closing argument. We disagree. The prosecutor referred to defense counsel's repeated argument that a third party committed the murder based on untested cigarette butts that were found in the victim's home as a red herring in light of the fact that "it's . . . not necessary" to do so, the fact that the victim was a smoker, and the prosecution's position that defense counsel's argument was merely offered in hopes of "distract[ing]" the jury. While Michigan courts have acknowledged that the term "red herring" may carry a negative connotation, referring to certain defense theories as "red herrings" is "a fair argument regarding what the jury should believe." *People v Blevins*, ___ Mich App ___, ___; ___ NW2d ___ (2016); slip op at 7. Furthermore, as indicated with respect to defendant's other prosecutorial-misconduct arguments, any error was presumptively cured by the trial court's jury instructions, and defendant again makes no effort to overcome this presumption. *Graves*, 458 Mich at 486.

### E. MOTION TO QUASH BINDOVER

Defendant argues that the trial court erred in denying his motion to quash his bindover. We disagree. Because defendant was "fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover," and we see no need to address such an argument any further. *People v Wilson*, 469 Mich 1018, 677 NW2d 29 (2004).

### F. MOTION FOR NEW TRIAL & DNA TESTING

Defendant additionally argues that the trial court abused its discretion in denying his motion for a new trial and for DNA testing.[8] We disagree.

---

[8] We would be remiss not to mention the fact that defendant requested, and the trial court granted, a motion to test various items for DNA during the pendency of this case, but that motion did not identify the items that defendant sought to test in his new-trial motion or the items that defendant seeks to test on appeal. The trial court also granted defendant's motion to adjourn trial to provide him with an opportunity to test various items for DNA, but, after the motion was granted, defendant failed to utilize that opportunity. Additionally, we want to make clear that defendant's request to test various items, including the cigarette butts, for DNA was made after a verdict was reached in this matter and as a part of his new-trial motion.

We review a trial court's decision to grant or deny a motion for new trial for an abuse of discretion. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Lane*, 308 Mich App at 51. A trial court may order a new trial, on defendant's motion, "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). However, a "[d]efendant is only entitled to a fair trial, not a perfect one." *People v Bahoda*, 448 Mich 261, 293; 531 NW2d 659 (1995).

In this case, defendant's motion for a new trial was premised almost entirely on the arguments that he raises on appeal, each of which we have found unpersuasive. As indicated above, the trial court correctly admitted, at a minimum, the twins' statement to Stevens, and, in light the abundance of other evidence implicating defendant's guilt, the admission of the twin's other statements was harmless. As also indicated above, the trial court correctly found no error with respect to the prosecution's failure to test various items, including the cigarette butts, for DNA evidence. Moreover, defendant merely speculates that testing these items might have been helpful to his case, and it is equally plausible that these items would have reflected even further evidence of defendant's guilt. Furthermore, he had an opportunity throughout the entirety of this case to test those items for DNA and chose not to. Thus, the trial court correctly denied defendant's new-trial motion.

## G. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also raises several ineffective-assistance claims relating to the arguments that are discussed above. Because defendant has not raised these arguments before, they are unpreserved and reviewed for mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, in light of our conclusions above, we need not substantively address defendant's ineffective-assistance arguments because trial counsel cannot be ineffective for failing to raise meritless arguments. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## III. CONCLUSION

In sum, because we find no errors requiring reversal, we affirm defendant's convictions and sentences.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien

-11-